**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **LENIKA STEPHANIE ARMSTEAD,** ) | |
|     **Plaintiff,** ) | **Civil Action No.:** |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **THE PARADIES SHOPS, LLC,** ) | |
|     **Defendant,** ) | |
| **And** ) | |
| ) | |
| **SYLATHA TAYLOR,** ) | |
| **(individually),** ) | |
|     **Defendant.** ) | |

_____

## COMPLAINT

Plaintiff, Lenika Stephanie Armstead, ("Ms. Armstead" or "Plaintiff") by and through her counsel, brings this action, against Defendant, The Paradies Shops, LLC, ("Defendant Employer") in The Civil Rights Act of 1964, as amended, in color, retaliation, and Sex Discrimination as amended by the Pregnancy Act of 1978, as amended, retaliation and for violations of the Family Medical Leave Act of 1993, 29 U.S.C. §2601, as amended ("FMLA") for equitable relief and money damages. And for violations of FMLA against Sylatha Taylor ("Taylor"), Plaintiff seeks equitable relief and money damages. Plaintiff alleges as follows:

1

## SUBJECT MATTER JURISDICTION

1.

This Court enjoys subject matter jurisdiction under, 28 U.S.C. § 1331, Federal Question, as this Complaint concerns a civil action arising under a United States law, the Family Medical Leave Act of 1993, ("FMLA"), 29 U.S.C. § 2601.

## PARTIES, JURISDICTION, VENUE

2.

The Plaintiff, Lenika Stephanie Armstead, ("Plaintiff") is a former employee of Defendants who subjects herself to the jurisdiction and venue of this Court.

3.

Defendant, The Paradies Shops, LLC, ("Defendant") is an international company that operates stores in airports, hotels, and other location throughout the United States, Canada and the world. Its registered agent, Corporation Service, is located at 40 Technology Parkway, South #300, Norcross, Georgia, Gwinnett County, Georgia 30092 and may be served at this address which is located within the state of Georgia, and in this federal district. As such, the Defendant is subject to the jurisdiction and venue of this Court.

4.

The acts/omissions of the Defendant, alleged in this Complaint, occurred at 2849 Paces Ferry Road, Suite 400, Cobb County, Atlanta, Georgia 30339, which is also located in this federal jurisdiction and venue.

5.

Therefore, the jurisdiction and venue of this Court are proper as to this action.

6.

Upon information and belief, Defendant is an employer as defined by FMLA, 29 U.S.C. § 2611 as Defendant is *"…engaged in an industry or activity affecting commerce who employees 50 or more employees for each of 20 or more calendar workweeks in the current or preceding calendar year…"* and knew or should have known its responsibilities prescribed by FMLA.

7.

Upon information and belief Taylor is an employer as defined by FMLA 29 U.S.C. § 2611 because Taylor, in her role as Plaintiff's supervisor, possessed significant control over Plaintiff's ability to exercise her FMLA rights. She may be served through the registered agent for Defendant Employer at 40 Technology Parkway, South #300, Norcross, Georgia, Gwinnett County, Georgia 30092.

8.

Upon information and belief, Plaintiff, Ms. Armstead, was, at all relevant times to this Complaint, an *"eligible employee"* as defined by FMLA for Family Medical Leave, under the Act *"because (s)he was employed for at least 12 months"* and as a "HR Benefits Coordinator" had worked *"more than the required 1250 hours"* enumerated by the FMLA,  29 U.S.C. § 2611(2).

9.

Plaintiff was also, at all times relevant to this action, an "employee" within the meaning of 42 U.S.C. § 2000-e.

10.

Defendant Employer is a private company organized and registered under the laws of the state of Georgia, employing in excess of fifteen (15) employees, for each working day in each of the twenty (20) calendar weeks in the current or preceding calendar year in conformity with 42 U.S.C. § 2000-e.

## **FACTUAL BACKGROUND**

11.

Plaintiff worked for the Defendants, in the corporate office, from on or about January 2016 until on or about February 2, 2018.

12.

Plaintiff worked for Defendants, first as a temporary worker, and because of her favorable performance at work, she was invited to work as a regular employee.

13.

Plaintiff was able to perform to the expectations of her employer and its customers.

14.

Customers spoke well of Plaintiff to her supervisors, with one customer referring to Plaintiff as a "shining star."

15.

In fact, Plaintiff was awarded a "First Class Service award" for doing an outstanding job.

16.

Plaintiff's immediate supervisor, Taylor, attempted to control all aspects of Plaintiff's life.

17.

Plaintiff is a light-skinned African American woman.

18.

Taylor is an African American woman with a skin color that is darker than Plaintiff and she holds an animus toward light-skinned women.

19.

Two of Plaintiff's predecessors were light-skinned women as well.

20.

Taylor often made negative comments about Plaintiff's predecessors.

21.

One of the predecessors, Chanel, transferred away from Taylor to the legal department.

22.

Taylor instructed Plaintiff that she was not permitted to speak to Chanel.

23.

Taylor would excessively text Plaintiff when Plaintiff was not on duty to a point where Plaintiff had to tell her to stop.

24.

When Taylor learned that Plaintiff was buying a new home, Taylor began looking at personal items concerning the home that were located on Plaintiff's desk.

25.

Taylor googled Plaintiff's new subdivision and made multiple comments to Plaintiff about the subdivision.

26.

When Plaintiff changed her hair color, Taylor dyed her own hair the same color as Plaintiff's hair.

27.

Taylor purchased the exact same car that Plaintiff was driving.

28.

Taylor kept track of Plaintiff's LinkedIn page and told her to change the wording.

29.

Taylor was heard several times making reference to Plaintiff by saying, "Stephanie think she cute, "You know how those light-skinned girls are…you know how they think."

30.

Often, Plaintiff would look up from her desk and Taylor would be glaring at her.  This intimidated Plaintiff and she requested HR to move her desk but her request was denied.

7

31.

Taylor often followed Plaintiff to places like the area to express milk, the breakroom, to payroll and into the hallway.

32.

Plaintiff informed the HR director and the Senior Vice President of HR several times of these incidents and of the disparate treatment she suffered but, according to information and belief, nothing was done about it.

33.

Plaintiff even requested a transfer away from Taylor but it was denied by HR.

34.

In 2017, Plaintiff became pregnant and Defendants were aware of the pregnancy.

35.

Plaintiff planned for the delivery by requesting her Family Medical Leave ("FMLA") in accordance with Defendant Employer's policy.

36.

Unfortunately, Plaintiff experienced a medical problem as a result of her pregnancy and she had to use all of the twelve weeks available to her under the

FMLA and additional personal leave afforded her in accordance with Defendant

Employer's Leave Policy.

37.

During her leave, Plaintiff received no communication from Defendant

Employer, Taylor, nor Defendant Employer's employees.  This lack of

communication did not comport with how other employees, on leave, had been

treated.

38.

Plaintiff returned from her leave and immediately began experiencing

retaliation against her.

39.

Plaintiff's immediate supervisor, Taylor, began adding more and more

jobs/tasks to the Plaintiff's responsibilities as soon as the Plaintiff returned to the

job.

40.

These new tasks were actually part of the job description responsibilities of

Taylor. Taylor did not provide proper training in these new responsibilities.  No

written instruction for the tasks existed.

41.

Taylor instructed other employees to refrain from helping Plaintiff to complete her new responsibilities, even preventing employees from assisting Ms. Armstead with the telephones. Upon information and belief, Taylor did not treat dark-skinned African American, non-pregnant women, who did not use FMLA leave in the same way.

42.

Plaintiff attempted to complete the new tasks by foregoing her lunch, her lactation breaks and by working longer hours in order to complete the extra work thrust upon her.

43.

During Plaintiff's leave, certain tasks had not been completed and Taylor was not concerned. Taylor laughed about the incomplete tasks and instead left the tasks for Plaintiff to clean up.

44.

Plaintiff was striving to catch up all of this unfinished work and the new tasks given her since her return from her FMLA leave.

45.

When Plaintiff returned to work, Taylor told her that "things were wrong while you were gone. It created and issue."

46.

Taylor wrongfully claimed that Plaintiff had made an error in her work, prior to going out on leave.

47.

Plaintiff confirmed with Payroll that said error had in fact not occurred.

48.

Plaintiff was able to confirm that the alleged error was actually a result of tampering while Plaintiff was on leave.

49.

After Plaintiff reported maltreatment by Taylor to Human Resources, ("HR") Taylor began alleging that Plaintiff made errors in her work. After announcing her pregnancy those allegations increased.

50.

Following Plaintiff's reports to HR, Taylor began a campaign of increased scrutiny of Plaintiff's work and began reporting alleged errors to HR.

51.

Upon returning from her FMLA leave, Taylor dumped additional duties onto Plaintiff without proper training and began with even more frequency reporting Plaintiff's alleged errors and inability to keep up with the job to Human Resources.

52.

When Plaintiff complained about Taylor to the higher up's in Human Resources, Human Resources told Plaintiff that Taylor possessed knowledge that no one else, in the company possessed and instructed Plaintiff to allow the retaliation to continue by stating , "you will have to overlook her behavior, she is the only one that provides for her family."

53.

On December 19, 2017, less than two months after returning to work, Human Resources acted on the misinformation provided by Taylor and wrote Plaintiff up, placing her on a "coaching plan." The plan was to include weekly meetings, and gave her thirty days in which to be coached. But no "coaching meetings" were ever scheduled and no coaching meetings occurred.

54.

During the thirty days following the implementation of the "coaching plan," Defendant Employer was closed for Christmas; New Year's; Martin Luther King,

Jr. Day; and snow.  Plaintiff was out of the office for an additional two days because, due to snow, she was unable to report to work. Plaintiff was additionally out of the office for her son's illness, flu.  Plaintiff was also restricted off work for approximately a week, by her doctor, due to high blood pressure, a condition that is concerning for a woman who has just given birth.

55.

Plaintiff was never afforded the thirty days for improvement.

56.

On February 1, 2018, Plaintiff informed Defendants that she would need a pregnancy-related surgery and that she again needed FMLA leave.  Plaintiff was terminated the next day.

57.

On February 2, 2018, the Defendant terminated the Plaintiff, citing, on the Separation Notice, "Unsatisfactory Performance."  This was approximately three months after the Plaintiff returned to work from her FMLA leave and one day after Plaintiff informed Defendants that she would need future time off and FMLA leave for surgery.

58.

When answering the Georgia Department of Labor inquiry, the Defendant cited "not able to perform since returning" as the reason for termination.

59.

The termination occurred just weeks before the Plaintiff's evaluation was due, just approximately three months after the Plaintiff returned to work and the FMLA retaliation began.

60.

Defendant Employer's reason given for the termination was a pretext for Defendant Employer's true reasons for terminating the Plaintiff, included Plaintiff's protected use of/intended use of FMLA, retaliation, color discrimination, retaliation, and sex discrimination/pregnancy discrimination and retaliation.

61.

As a result of the Defendant's retaliation and discrimination, Plaintiff lost prestige in her rural community, was humiliated, lost medical benefits, and suffered economic loss, of which Plaintiff is entitled to pecuniary and equitable relief.

14

62.

Defendant Employer, in violation of Plaintiff's rights, failed to (a) provide Plaintiff with employment wherein she could be free from sex and color discrimination and retaliation, FMLA retaliation; (b) respond promptly to Plaintiff's complaints; (c) thoroughly investigate Plaintiff's complaints; (d) take appropriate remedial action when Defendant Employer knew or should have known same; and (e) discharge, suspend, reprimand, or otherwise appropriately and timely discipline Taylor who perpetrated the color, sex discrimination, retaliation and FMLA violations.  Taylor, in her capacity as Plaintiff's immediate supervisor used her influence to have Defendant Employer act on her animus and she perpetrated interference in Plaintiff's FMLA benefits and retaliated against Plaintiff for the use/intended use of her FMLA benefits.

**COUNT I- COLOR DISCRIMINATION UNDER TITLE VII OF THE
CIVIL RIGHTS ACT OF 1964, AS AMENDED,
BY DEFENDANT EMPLOYER**

63.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

64.

Defendant discriminated against Plaintiff based on her color, a light-skinned

African American, in the terms and conditions of her employment by disciplining her and terminating her in violation of Title VII.

65.

Plaintiff's color was a motivating factor in the unreasonable discipline she received and the termination of her employment.

66.

Defendant Employer's actions were willful, wanton, and intentionally directed to harm Plaintiff.

67.

Defendant Employer's actions were reckless and taken in willful disregard of the probable consequences of its actions.

68.

Defendant Employer has acted with malice or reckless indifference to the rights of Ms. Armstead. Therefore, Plaintiff is entitled to punitive damages for the egregious actions of Defendant Employer.

69.

Because of Defendant Employer's intentional violation of the rights of

16

Plaintiff, secured by Title VII, Plaintiff suffered anguish, humiliation, distress, harm to reputation, inconvenience, physical damage, emotional damage, damage to her professional reputation, and loss of enjoyment, entitling her to compensatory damages.

70.

Defendant Employer's actions and failures were the proximate, and but for cause of the harm suffered by Plaintiff as alleged herein.

71.

To remedy the violation of Plaintiff's rights, she is entitled to an award of back pay and benefits, compensatory damages, attorney's fee, and all other appropriate damages, remedies and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

### COUNT 2-SEX DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT OF 1978 AND THE CIVIL RIGHTS ACT OF 1991, BY DEFENDANT EMPLOYER

72.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

73.

Plaintiff was pregnant of which Defendant Employer was aware.

74.

Upon her return from pregnancy leave, Plaintiff was punished for her absence with additional jobs duties in which no adequate training was provided. No training manual for these new tasks existed.

75.

Other employees were not treated this way and were provided sufficient training.

76.

When Plaintiff returned from her pregnancy leave, she was expressing milk at work.

77.

The area set aside for expression of milk was located quite a ways away from Plaintiff's working area and required her to catch an elevator in order to get to the location.

78.

Taylor sometimes followed Plaintiff when Plaintiff was on her way to the area for expressing milk.

79.

At one point Taylor told Plaintiff that it took her (Plaintiff) twenty two minutes to express milk that day and that she should try to make it faster.  Plaintiff reported this to HR and according to information and belief, Taylor was not disciplined however, Plaintiff was placed on a "coaching plan,"

80.

Plaintiff did her best to rush in order to express.

81.

Plaintiff was seen by other employees running down the hallways in order to preserve the time for the process of expression.

82.

Plaintiff, at times, felt that she had to skip expression in order to meet the demands of her supervisor and she often skipped lunches and worked extra hours. This was because the pressure from Plaintiff's supervisor, Taylor, was so great and because Taylor was continually reporting that she (Plaintiff) was not keeping up with her work, causing Plaintiff to be placed on a "coaching plan."

83.

According to information and belief, other nursing mothers and employees who were not nursing were not treated this way.

84.

By disciplining Plaintiff because of her pregnancy, Defendant Employer

violated Title VII and the PDA.

85.

As a result of Defendant Employer's discriminatory acts, Plaintiff is entitled

to recover the relief requested below.

## COUNT 3-RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, COLOR, BY DEFENDANT EMPLOYER

86.

Plaintiff incorporates by reference the allegations set forth in the preceding

paragraphs of this Complaint as if fully set forth herein.

87.

Defendant Employer disciplined then terminated Ms. Armstead in retaliation

for her complaint of discrimination based on color, in violation of Title VII, 42

U.S.C. § 2000-e, et seq.

88.

Plaintiff's termination occurred within forty five (45) days of her complaint

of color discrimination to management and Human Resources. Thus, her complaint

20

and termination were causally connected.

89.

But for Plaintiff's act of reporting color discrimination, she would not have been disciplined/terminated.

90.

Defendant's stated reason for termination, "unable to perform since returning" was pretext for color discrimination and retaliation for complaining about color discrimination.

91.

Defendant's retaliation for protected activity under the opposition clause of Title VII's anti-retaliation provisions violated Plaintiff's right to engage in protected activity.

92.

As a direct result of Defendant's actions and omissions, Plaintiff suffered lost wages, mental and emotional distress, humiliation, outrage, damage to her reputation, the deprivation of her rights under federal law, and is entitled to compensatory and punitive damages.

**COUNT 4-RETALIATION IN SEX DISCRIMINATION UNDER TITLE VII
OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e,
AS AMENDED BY
THE PREGNANCY DISCRIMINATION ACT OF 1978 AND
THE CIVIL RIGHTS ACT OF 1991, BY DEFENDANT EMPLOYER**

93.

Plaintiff incorporates by reference the allegations set forth in the preceding

paragraphs of this Complaint as if fully set forth herein.

94.

Defendants had knowledge of Plaintiff's pregnancy.

95.

Immediately upon return from pregnancy leave, Plaintiff was assigned

additional tasks for which she did not receive training and her work came under

strict scrutiny.

96.

Plaintiff reported the pregnancy discrimination she suffered.

97.

Plaintiff was asked by her manager to cut short the sessions needed to

express milk and Plaintiff also reported this to HR.

98.

Within three months pf returning from pregnancy leave, Plaintiff was placed

on a "coaching plan" in which no coaching ever took place.

22

99.

Within four months of returning from pregnancy leave, Plaintiff was terminated.

100.

Defendant's retaliation for protected activity under the opposition clause of Title VII's anti-retaliation provisions violated Plaintiff's right to engage in protected activity.

101.

As a direct result of Defendant's actions and omissions, Plaintiff suffered lost wages, mental and emotional distress, humiliation, outrage, damage to her reputation, the deprivation of her rights under federal law, and is entitled to compensatory and punitive damages.

102.

While Plaintiff was told that the reason for her termination was "poor job performance," Defendant Employer responded to the Department of Labor inquiry that Plaintiff was "unable to perform the job since returning."

## COUNT 5-INTERFERENCE WITH FMLA RIGHTS, BY DEFENDANT EMPLOYER AND TAYLOR

103.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

104.

Defendants had knowledge that Plaintiff needed surgery for a pregnancy-related condition.

105.

Plaintiff discussed with management that she needed FMLA leave for her upcoming surgery.

106.

Had Plaintiff remained employed, Plaintiff would have become eligible once again for FMLA leave on or about March or April of 2018 because she would have: been employed for twelve months; worked over 1250 hours during those twelve months; and Defendant employed more than 50 employees within a 75-mile radius from where Plaintiff worked.

107.

Defendants terminated Plaintiff one day after her announcement that surgery was needed and before she could exercise her FMLA rights.

24

108.

As a result of Defendants' interference with Plaintiff's FMLA leave, Plaintiff is entitled to recover the relief requested below.

**COUNT 6-RETALIATION UNDER FMLA
A VIOLATION OF 29 U.S.C. §2615(a)(1) AND (2),
BY DEFENDANT EMPLOYER AND TAYLOR**

109.

Plaintiff incorporates the preceding paragraphs as if stated in this section of the claim for relief.

110.

The Plaintiff was an "eligible employee" having worked for the Defendant for more than a year, having met the FMLA criteria of employment in excess of one year and 1250 hours worked. As a result, the Plaintiff was entitled to 12 workweeks of leave during any 12 month period because the Plaintiff suffered from a serious health condition, requiring 12 weeks of treatment a qualifying event under 29 U.S.C. §2612(a)(1)(D).

111.

FMLA leave may be planned or unplanned and may be used *"intermittently"* or on a *"reduced leave schedule"* when *"medically necessary"* as described by 29 U.S.C. § 2612(b).

112.

FMLA, 29 U.S.C. § 2615(a)(2) prohibits employers from discriminating against employees who utilize their FMLA rights. An employee bears the burden when stating an offense of retaliation by showing that the employer's actions were motivated by impermissible retaliation or discriminatory animus.

113.

Here, there is direct evidence that the Defendant disciplined then terminated the Plaintiff for using/requesting her FMLA rights.

114.

Defendant Employer, when defending the Plaintiff's unemployment claim, stated to the Georgia Department of Labor, that the Plaintiff was terminated for "unable to perform since returning." The Defendant was aware that the Plaintiff suffered from an FMLA-qualifying illness and that she would be using FMLA leave for her upcoming surgery.

115.

In the alternative, an employee may state a prima facie case of retaliation by utilizing the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), shifting burden framework that is also used in Title VII cases of retaliation. A plaintiff must show that 1) she engaged in statutorily protected activity; 2) she suffered an

adverse employment action; and 3) there is a causal connection between the protected conduct and the adverse employment action.

116.

Ms. Armstead, the Plaintiff, had a serious medical condition. Leave to treat the serious condition should have protected her job by means of the FMLA. But instead, the Plaintiff suffered an adverse employment action, the piling on of excessive work tasks, and inappropriate write-up's leading to termination. The temporal proximity of the Plaintiff's use and intended use of her FMLA rights due to a qualifying illness and the Defendant's increased duties, discipline and termination, suggest a causal connection of the Defendant's actions to the Plaintiff's use of her FMLA leave.

117.

The Defendant stated to the Georgia Department of Labor that the reason for the termination was the Plaintiff's *"not able to perform since returning."* By this statement, the Defendants admit that the Plaintiff was capable of and in fact did perform her job, previous to the increase in job duties, and discipline that led to termination.

118.

Given all of the facts described above, the Plaintiff states a prima facie case for retaliation because the Plaintiff meets the legal criteria of having been engaged in a statutorily protected activity, using her FMLA rights, suffering an adverse employment action; first being written up, then terminated; having a causal connection between the protected activity and the termination, *"not able to perform since returning."*

119.

When a prima facie case is stated by the plaintiff, the burden shifts to the defendant to state a legitimate, non-discriminatory reason for her actions.  Once the reason is stated, the burden shifts back to the plaintiff to show that the stated reason of the defendant is a pretext and the actual reason is an impermissible one.

120.

In the instant case, Defendants told Plaintiff that she was being terminated for "unsatisfactory performance" but the Defendant later changed their reason for termination.  Defendant stated on Plaintiff's separation notice as the reason for termination *"unable to perform since returning."*  The Plaintiff performed well prior to the addition of so many of Taylor's responsibilities, prior to the discipline, by Defendants, and according to Defendants, prior to the Plaintiff's use of FMLA

28

leave. In addition, Defendants changed their reason for termination. Plaintiff has satisfied her burden to show Defendants' reason for termination was pretextual, an attempt to conceal their true motives for termination of retaliation in FMLA.

121.

Defendants' violation of Plaintiff's FMLA rights was willful. The Defendants, with their size and resources were aware of their responsibilities and the prohibitions under FMLA but chose to inflict retaliation on Plaintiff, leading to Plaintiff's discipline then termination.

## TRIAL BY JURY

122.

The Plaintiff requests trial by jury as permitted by the Seventh Amendment to the United States Constitution.

## CONCLUSION

The Defendants violated the Plaintiff's FMLA, statutorily protected rights by interfering and retaliating against the Plaintiff. Defendant Employer violated Plaintiff's rights under Title VII and the Pregnancy Discrimination Act. The Plaintiff is entitled to pecuniary and equitable relief as follows:

WHEREFORE the Plaintiff respectfully requests that the Court:

1. Grant a jury trial;

2. Adjudicate and declare that the Defendant has violated the rights of the Plaintiff under the statutes listed above;

3. Award the Plaintiff appropriate back pay, including reimbursement for lost pay, and fringe benefits in an amount to be determined at trial;

4. Award the Plaintiff prejudgment interest as allowed by law;

5. Award the Plaintiff liquidated damages where appropriate;

6. Award the Plaintiff the expenses of litigation, including attorney's fees, expert witness fees, costs, and disbursements;

7. Award the Plaintiff re-instatement with lost seniority or in the alternative front pay;

8. Award nominal damages;

9. Grant such relief as may be just and determined by the Court to be appropriate.

Dated this 9th day of December, 2020.

Respectfully submitted,

*s/s Beverly A. Lucas*
LUCAS & LEON, LLC
Beverly Lucas
Georgia Bar No.:  427692
beverly@lucasandleon.com
706-754-2001 (O) 706-754-8085 (F)

## <u>CERTIFICATION</u>

I do hereby certify that this document has been prepared in Times

Roman font, 14 point, in compliance with L.R. 5.1(C), of this Court.

> */s/ Beverly A. Lucas*
> Beverly A. Lucas
> Attorney for the Plaintiff
> Georgia Bar No.:  427692
> LUCAS & LEON, LLC
> Post Office Box 752
> Clarkesville, Georgia 30523
> (O) 706-754-2001
> (F)  706-754-8085
> beverly@lucasandleon.com